UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY K. OWEN,

        Plaintiff,

    v.                                                      Case No. 21-C-28

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

      This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Timothy Owen's applications for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g). Plaintiff argues that the Commissioner's decision should be reversed and the case remanded for further proceedings. For the following reasons, the decision of the Commissioner will be affirmed.

## BACKGROUND

      On May 24, 2018, Owen filed an application for supplemental security income, and on June 2, 2018, he filed an application for a period of disability and disability insurance benefits. In both applications, Owen alleged disability beginning April 12, 2018. He listed agoraphobia, depression, anxiety, suicidal, social anxiety, and separation anxiety as the conditions that limited his ability to work. R. 232. Following the denial of his applications initially and on reconsideration, Owen requested a hearing before an administrative law judge (ALJ). ALJ Wayne

Ritter conducted a hearing on February 7, 2020. Owen, proceeding *pro se*, and a vocational expert (VE) testified. R. 37–68.

At the outset of the hearing, the ALJ confirmed that Owen was advised of his right to counsel and that Owen was prepared to go forward without counsel. R. 39. Owen also signed a waiver of representation at the hearing. At the time of the hearing, Owen was 27 years old. He lived in a house with his mother, stepfather, and brothers in Niagara, Wisconsin. R. 47. Owen dropped out of school in eighth grade but later got his GED. R. 50. He previously worked at Little Caesar's in the kitchen, but he quit that job because he was attempting to break his arm to have an excuse to not attend work that day. R. 44. Owen also worked in two call centers and in an at-home job. R. 49, 58. He stated that he worked a couple of different jobs but was not able to effectively maintain them because he experienced panic attacks that led to suicidal ideation. R. 42. Owen testified that his stress was caused by leaving the house and having to deal with people. R. 45. He indicated that he was stressed and felt like crying at the hearing. R. 42.

As to activities of daily living, Owen does some cleaning, laundry, and cooking; shops for food; reads; writes; plays video games; and spends time with his family. R. 52–53. He indicated that he never tried to get a driver's license. R. 53. He reported seeing a therapist for two years. R. 45. Owen testified that he does not take any medications because they make his conditions worse. R. 55. He indicated that he uses an inhaler for his asthma and takes allergy pills and a sleeping pill. R. 56.

In an eleven-page decision dated February 27, 2020, the ALJ concluded Owen was not disabled. R. 21–31. The ALJ's decision followed the Social Security Administration's five-step sequential process for determining whether an individual is disabled. The ALJ concluded Owen met the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity since April 12, 2018, the alleged onset date. R. 23.

The ALJ listed anxiety disorder, depressive disorder, and personality disorder as Owen's severe impairments. *Id.* Nevertheless, the ALJ determined Owen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24. After careful consideration of the record, the ALJ concluded Owen had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public and supervisors." R. 26. Considering Owen's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Owen can perform, including dishwasher, cleaner, and assembler. R. 30–31. Accordingly, the ALJ found Owen was not disabled from April 12, 2018, through the date of the decision. R. 31.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to

3

seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.*

4

Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Owen's brief is one page long and seeks an award of benefits. He does not point to any specific deficiencies in the ALJ's analysis or reasoning or explain why the ALJ's decision is not supported by substantial evidence. Although *pro se* filings are held to a less exacting standard than those prepared by counsel, the filing must contain a cogent argument with reasons supporting

5

it as well as citations to authority and relevant parts of the record. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Despite Owen's failure to make a concrete argument, the Court has undertaken a review of the record and concludes that the ALJ's findings are supported by substantial evidence.

The ALJ determined that Owen had several severe impairments but concluded they did not meet or equal the required listings. He concluded that Owen had the RFC to perform a full range of work at all exertional levels but with the following limitations: "he is limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public and supervisors." R. 26. In creating this RFC, the ALJ relied upon Owen's self-assessment of his abilities, the function report completed by Owen's mother, Owen's activities of daily living, the opinions of the state agency psychological consultants and consultative psychological examiner, and the objective findings contained in the medical record. Owen argues that his work experiences support a finding of disability, but he has not provided any specific evidence to support his assertion. The ALJ's discussion of the record was thorough, and his conclusions are consistent with the evidence in the record.

Owen asserts that the ALJ cut his testimony short and that his mother should have been able to testify. At the beginning of the hearing, the ALJ asked Owen if he had any witnesses, and Owen stated, "No . . . it's just me." R. 41. After the VE testified, the ALJ asked if Owen had anything further to add. Owen responded, "I can't really say that there, there is anything. I mean, anything I can think of just sounds pathetic." R. 67. The ALJ assured Owen, "I want to hear it, sir. If there is anything else you want to tell me, I want to hear it. I'm writing, but that doesn't mean I'm not listening. I am listening." *Id.* Once Owen made a final statement, the ALJ asked, "Well, we, we have all the evidence, then correct." *Id.* Owen responded that they did, and the

6

ALJ closed the hearing record. *Id.* The ALJ gave Owen ample opportunity during the hearing to describe his symptoms, abilities, and limitations and present witnesses.

Owen also maintains that the agency improperly marked his request that the Appeals Council review the ALJ's decision as late, even though he filed it within the sixty-day period. However, it does not appear that any filing in the administrative record was marked late, and the Appeals Council considered Owen's request for review without any penalty for untimeliness. R. 1–4. In short, there is no error on this basis.

Although Owen disagrees with the ALJ's conclusion that he is not disabled, his contention does not invalidate the ALJ's decision which is supported by substantial evidence in the record. *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). Owen essentially asks that this Court reweigh the evidence and overrule the ALJ's opinion. That is not this Court's role, however. Judicial review is intended to be deferential, and the final decision of the Commissioner will be upheld if the ALJ applies the correct legal standards and substantial evidence supports his decision. 42 U.S.C. § 405(g). After a review of the record, the Court concludes that the ALJ did not commit any legal errors. I therefore affirm.

## CONCLUSION

For the reasons above, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 23rd day of November, 2021.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge